**Barry A. GLAZER, Plaintiff,**

v.

**CITY OF LONG BEACH, a public entity; D. Davidson (# 5107), sued individually and in his official capacity as a police officer, Defendants.**

No. CV 99–1086 FMC(Ex).

United States District Court, C.D. California.

April 7, 2000.

Jorge Gonzalez, Jorge Gonzalez Law Offices, Los Angeles, CA, for plaintiff.

Robert E. Shannon, Michael M. Peters, Long Beach City Attorney, Long Beach, CA, for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COOPER, District Judge.

### I. Introduction

This matter is before the Court on defendants' Motion for Summary Judgment, filed on March 15, 2000.[1] Defendants move for summary judgment on the ground that defendant Davidson ("Davidson") had probable cause to arrest plaintiff and plaintiff's arrest did not violate plaintiff's Fourth Amendment rights. In addition, defendants contend that the force used during the arrest was objectively reasonable and, thus, Davidson is entitled to qualified immunity. Finally, defendants contend that plaintiff has failed to establish a *Monell* claim against defendant City of Long Beach ("City of Long Beach").

Plaintiff opposes this motion on the grounds that Davidson illegally entered his home without a warrant and used excessive force during his arrest. Plaintiff also asserts force used by Davidson to arrest him was sanctioned by City of Long Beach policy.

The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.Proc. 78; Local Rule 7.11. Accordingly, the hearing set for April 10, 2000, is removed from the Court's calendar. After considering the moving and responding papers, the Court issues the following decision:

### II. Standard

In reviewing a motion brought under Rule 56(c), the Court construes all evidence and reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492–93 (9th Cir.1995). The Court must assume the truth of direct evidence set forth by the opposing party and may consider the "plausibility and reasonableness" of any inferences arising from circumstantial evidence offered by that party. *See Kortan v. State of California*, 5 F.Supp.2d 843, 848 (C.D.Cal.1998) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir.1992)).

Summary judgment is only proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no issues as to any material fact and that the moving party is entitled

---

1. The Court notes that defendants filed an identical Motion for Summary Judgment on March 10, 2000. The Court issued a Minute Order on March 22, 2000, notifying the parties that this motion would be heard on April 10, 2000 along with the Motion for Summary Judgment filed on March 15, 2000. This Order Denying Defendants' Motion for Summary Judgment applies to both the March 10th and March 15th motions for summary judgment.

to judgment as a matter of law." Fed. Rule Civ. Pro. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *See id.* at 248, 106 S.Ct. 2505.

Summary judgment is properly granted where the moving party demonstrates an absence of facts necessary to establish an essential element of a cause of action upon which judgment is sought. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon such showing, the non-moving party must "go beyond the pleadings" and offer "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Mere disagreement or the bare assertion that a genuine issue of material fact exists is not sufficient and will not preclude the grant of summary judgment. *See Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989).

### III. Discussion

This case arises out of an investigation by Davidson, an officer with the Long Beach Police Department, of an alleged burglary at the apartment complex in which plaintiff resides. (*Def. Motion*, pg.4, lines 1–3) During Davidson's preliminary investigation, plaintiff was identified as a possible suspect. (*Id.*, lines 9–14.) Armed with this information, Davidson proceeded to plaintiff's apartment and summoned plaintiff by knocking his door. (*Id.*, lines 24–28.) At this point, the parties' versions of events differ substantially. For purposes of this motion, however, the Court must assume the truth of the facts as set forth by plaintiff.

Plaintiff asserts that Davidson informed him of the burglary investigation and twice requested that plaintiff step outside his apartment to discuss this matter. (*Plaintiff's Opp.*, pg. 3, lines 22–23.) Plaintiff refused to step outside and asked Davidson if Davidson had a warrant. (*Id.*, pg. 4, lines 3–4.) Plaintiff and Davidson were approximately four feet apart during this exchange. After plaintiff's second refusal to step outside, Davidson entered the apartment and grabbed plaintiff by the arm. (*Id.*, lines 9–18.) This sudden movement caused plaintiff to flinch backwards in a reflexive manner. (*Id.*, lines 18–19.) Davidson then spun plaintiff around and employed a carotid choke-hold to subdue plaintiff. (*Id.*, lines 19–20.) Davidson maintained the choke-hold as he escorted plaintiff from the apartment down to the street below. (*Id.*, lines 23–24.) Plaintiff was not arrested on the burglary charge because it was determined shortly thereafter that the report was false. (*Id.*, pg. 5, lines 1–3.) Plaintiff, however, was booked for resisting arrest. (*Id.*, line 4.)

As discussed below, genuine issues of material fact exist with respect to each of plaintiff's claims. Thus, defendants cannot prevail on summary judgment.

### A. Fourth Amendment Claim

#### 1. Unlawful Arrest

■ The Fourth Amendment protects an individual's privacy in a number of different settings. In none of these settings is the zone of privacy more clearly defined than the physical boundaries of an individual's home. *See Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). This zone of privacy has its foundations in the very language of the Fourth Amendment, "[t]he right of the people to be secure in their . . . houses against unreasonable searches and seizures shall not be violated." *Id.* at 590,

100 S.Ct. 1371. The *Payton* Court held that the Fourth Amendment explicitly prohibits police officers from making a warrantless and nonconsensual entry into a suspect's home to effect an arrest absent exigent circumstances. *See id.* at 576, 100 S.Ct. 1371. Such an entry is prohibited because the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* at 585, 100 S.Ct. 1371.

So explicit is this constitutional protection, that "searches and seizures inside a home without a warrant are presumptively invalid." *Id.* at 586, 100 S.Ct. 1371. In enforcing this zone of privacy, the Supreme Court has drawn a firm line at the entrance of the home and "absent exigent circumstances [or consent], that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. 1371; *see also New York v. Harris*, 495 U.S. 14, 18, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). It is undisputed that Davidson did not have a warrant for plaintiff's arrest. It is also undisputed that plaintiff did not consent to Davidson's entry into the apartment. Thus, to prevail on their motion, defendants must establish the existence of both probable cause and exigent circumstances at the time Davidson entered the apartment.

To support their contention that probable cause existed, defendants point to the following facts: an eyewitness identified the owner of apartment # A as the person who broke into the storage unit; plaintiff lived in apartment # A; a physical description of the suspect matched plaintiff; confirmation from the individual using the storage unit that items were missing; and an initial inspection of the storage unit by Davidson revealed that the lock to the unit had been removed and placed inside the unit.

The Ninth Circuit has repeatedly held that "the question of whether a reasonable officer could have believed probable cause existed goes to the jury unless there is only one conclusion a rational jury could reach." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir.1993). The Court is not satisfied that a jury could reach only one conclusion on the issue of probable cause.

The Fourth Amendment prohibits police officers from making a warrantless entry into a person's home, *unless the officers have both probable cause and are confronted with exigent circumstances. See Payton*, 445 U.S. at 590, 100 S.Ct. 1371 (emphasis added); *see also LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir.2000). Absent exigent circumstances, probable cause alone cannot justify an officer's warrantless entry into a person's home. *See LaLonde*, 204 F.3d at 954; *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *see also U.S. v. Al–Azzawy*, 784 F.2d 890, 894 (9th Cir.1985) ("Probable cause alone will not support a warrantless search or arrest in a residence unless some exception to the warrant requirement is also present.").

The Ninth Circuit has defined exigent circumstances as "those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search [or arrest] until a warrant could be obtained." *U.S. v. Salvador*, 740 F.2d 752, 758 (9th Cir.1984) (quoting *U.S. v. Robertson*, 606 F.2d 853, 859 (9th Cir.1979)). The defendants bear the burden of showing the existence of exigent circumstances which made the warrantless arrest imperative. *Id.* Demonstrating the existence of exigent circumstances sufficient to justify a warrantless entry into a suspect's home, is a "heavy burden ... met only by demonstrating specific and articulable facts to justify the finding of exigent circum-

stances." *LaLonde,* 204 F.3d at 957 (quoting *U.S. v. Driver,* 776 F.2d 807, 810 (9th Cir.1985)).

Defendants do not claim that exigent circumstances justified Davidson's entry into plaintiff's home nor is there any evidence which would support such a contention. Rather, relying on *U.S. v. Vaneaton,* 49 F.3d 1423 (9th Cir.1995), defendants argue that the warrantless arrest of plaintiff in the doorway of his home did not violate the Fourth Amendment's zone of privacy as set forth in *Payton.*

In *Vaneaton,* the police located a burglary suspect residing in a local motel. Without a warrant, the police approached the suspect's room and knocked on the door. The suspect peered through the curtains, saw the police, and then opened the door whereupon he was placed under arrest. Despite its apparent departure from *Payton,* the *Vaneaton* court recognized that police are prohibited from making a warrantless, non-consensual entry into a suspect's home to make an arrest absent exigent circumstances. The *Vaneaton* court, however, did not decide the case on the basis of whether the suspect was standing inside or outside the threshold of the motel room doorway. Instead, the majority focused on whether the suspect voluntarily exposed himself to the warrantless arrest in a public place by opening the door to his motel room to the police.

The *Vaneaton* court distinguished *Payton* by noting that in *Payton* the entries by the police preceded the arrests, whereas in *Vaneaton* the police specifically advised the suspect that he was under arrest before they crossed the threshold of the doorway. For this very reason, this Court finds *Vaneaton* to be distinguishable. Plaintiff contends that Davidson never advised him that he was under arrest prior to entering plaintiff's home.

■ In *LaLonde,* the officers informed plaintiff that they were investigating a disturbance of the peace call and twice asked plaintiff to step outside his apartment to discuss this matter. *See LaLonde,* 204 F.3d at 951. Plaintiff refused each request to step outside. *See id.* Despite the lack of a warrant and the absence of exigent circumstances, the officers entered plaintiff's apartment to effect the arrest. *See id.* In concluding that the arrest violated the Fourth Amendment, the *LaLonde* court gave considerable weight to the fact that the officers' entry preceded the arrest and, therefore, was not covered by the doorway exception established in *Vaneaton. See id.* at 955.

> The Fourth Amendment's prohibition on warrantless entry into an individual's home does not apply to arrests made at the doorway, because the doorway is considered a public place. *U.S. v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Vaneaton,* 49 F.3d at 1427. In the present case, however, neither party contends that the officers attempted to arrest LaLonde at the doorway. While the officers were standing at the doorway, they sought to ask LaLonde, who was standing a few feet inside the apartment, some questions about a disturbing the peace complaint. The arrest took place only after the officers had crossed the threshold of the door and entered LaLonde's apartment. Thus, the present case does not fall under the doorway exception.

*Id.*

In this case, there is no evidence that Davidson announced his intention to arrest plaintiff before entering the residence. In Officer Davidson's declaration, he states that as he reached in and grabbed plaintiff's wrist, he announced his intention to arrest. The court's research has disclosed no cases in which *Vaneaton* has been extended beyond its narrow facts. Nor could any such extension be justified, in

the face of the Supreme Court's holding in *Payton* that the physical entrance to one's home is a bright line over which the police may not cross, absent exigent circumstances or consent to enter. *See Payton,* 445 U.S. at 589, 100 S.Ct. 1371.

Additionally, the *Vaneaton* court relied, for its "doorway exception," on *United States v. Santana.* In *Santana,* the defendant was standing within the frame of her doorway, on the threshold. Under those circumstances, the Court held she was in a public place, "as if she had been standing completely outside her house." *Santana,* 427 U.S. at 42, 96 S.Ct. 2406. Similarly, in *Vaneaton,* the defendant was standing "at the doorway ... just inside the threshold." *Vaneaton,* 49 F.3d at 1423.

Although the *Vaneaton* court did not base its decision on the precise proximity of the defendant to his threshold, *Payton* prohibits a conclusion that an officer could cross a threshold and come a few feet into a citizen's home to effect an arrest, in the absence of exigency or consent.

Defendants' motion for summary judgment on plaintiff's claim of unlawful arrest in violation of the Fourth Amendment is denied.

### 2. Excessive Force

Under the Fourth Amendment, police may use "only such force as is objectively reasonable under the circumstances ...." when making an arrest. *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994) (citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The question to be answered is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them ...." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene at the time." *Id.* at 396, 109 S.Ct. 1865.

In the present case, there is a factual dispute regarding plaintiff's reaction to Davidson's initial efforts to arrest him. Davidson contends that plaintiff raised his arms leading Davidson to believe that plaintiff was resisting arrest and was attempting to slap Davidson with his free arm. (*Def. Motion,* pg. 17, lines 8–20.) Plaintiff, however, asserts that he never resisted Davidson's efforts to arrest him and that any movement of his arms were purely reflexive in response to Davidson's sudden move to grab him. (*Plaintiff's SUF,* pg. 2, lines 15–18.)

These factual disputes preclude a determination on summary judgment that the force used was objectively reasonable under the circumstances. Defendants' motion for summary judgment on plaintiff's claim of excessive force in violation of the Fourth Amendment is denied.

### B. Qualified Immunity

Under the doctrine of qualified immunity, government officials performing discretionary functions are protected from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). When a law enforcement officer asserts qualified immunity to preclude liability for alleged Fourth Amendment violations, the court "must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed his conduct was lawful." *Act Up!/Portland,* 988 F.2d at 871. Under this standard, the officer is entitled to qualified immunity, unless a reasonable police officer would have known that the conduct at issue was unlawful under clearly established law. *See LaLonde,* 204 F.3d at 953; *see also*

*Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034.

 "The determination of whether a reasonable officer could have believed [the] conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed." *LaLonde,* 204 F.3d at 953. Where a material dispute exists as to the facts regarding what the officer or plaintiff actually did, the case must proceed to trial. *See id.; see also Act Up!/Portland,* 988 F.2d at 873 ("If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial."). As discussed in sections III.A.1 and III.A.2, genuine issues of material fact exist regarding the circumstances of plaintiff's arrest. Resolution of these factual disputes is necessary before a determination can be made as to whether a reasonable officer could have believed that Davidson's conduct in arresting plaintiff was lawful. Therefore, defendants' motion for summary judgment on the grounds of qualified immunity is denied.

### C. *Monell Claim*

 When the execution of a government's policy or custom results in the injury to an individual, that government, as an entity, is liable for the injury under § 1983. *See Monell v. Dep't. of Soc. Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability under *Monell* is limited to "acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Davidson testified at his deposition that the Long Beach Police Department trained him in the use of the choke-hold to subdue certain suspects. Plaintiff contends that the choke-hold was widely used by Long Beach police officers. Davidson testified that he personally used the choke-hold on more than fifty occasions. Plaintiff further asserts that the Long Beach Police Department requires a review and report of each instance where an officer employs that choke-hold on a suspect. Defendants deny these assertions, but offer no evidence to support the denials.

 There is a factual dispute as to whether and to what extent use or abuse of the choke-hold was customary among Long Beach police officers. Defendants' motion for summary judgment on plaintiff's *Monell* claim is denied.

### IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment is denied.

IT IS SO ORDERED.